IN THE UNITED STATES DISTRICT Court
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DEBRA J. FARR,

                                        Plaintiff,

              vs.                                        Civil Action No.
                                                         6:07-CV-0061 (LEK/DEP)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,[1]

                                        Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

ANTONOWICZ LAW FIRM             PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, NY  13440-4600

FOR DEFENDANT

HON. ANDREW BAXTER             TOMASINA DiGRIGOLI, ESQ.
United States Attorney          Special Asst. U.S. Attorney
Northern District of New
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

          [1]     Plaintiff's complaint, which was filed on January 17, 2007, named Jo
Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the court has
therefore substituted him as the named defendant, and no further action is required to
effectuate this change.  See 42 U.S.C. § 405(g) ("Any action instituted in accordance
with this subsection shall survive notwithstanding any change in the person occupying
the office of Commissioner of Social Security or any vacancy in such office.")

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Debra Farr, who suffers from several diagnosed physical

and mental conditions including major depression, the residual effects of a

T-12 fracture, osteoarthritis in her back, obesity and degenerative

changes in her right foot, has commenced this proceeding pursuant to

section 205(g) of the Social Security Act (the "Act"), as amended, 42

U.S.C. § 405(g), seeking judicial review of an administrative determination

denying her application for supplemental security income ("SSI") benefits

under the Act.  Plaintiff contends that the finding made by an

administrative law judge ("ALJ") assigned to hear and determine the

matter upon which the denial of benefits hinges, to the effect that she was

not disabled at the relevant times, is not supported by substantial

evidence.  In support of her challenge, plaintiff maintains that in

concluding she is not disabled, the ALJ impermissibly minimized the

effects of her physical and mental conditions upon her ability to perform

work functions, and failed to acquire additional information to fill critical

voids in the record before him.

Having carefully considered the record in the light of plaintiff's arguments, I conclude that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence in the record.

I.    BACKGROUND

Plaintiff was born in January of 1962; at the time of issuance of the ALJ's decision now challenged, she was forty-four years old. Administrative Transcript at p. 46.[2]  Plaintiff is divorced, and lives with her son in a home in Frankfort, New York.  AT 46-47, 178-180. Plaintiff is a high school graduate, and has completed one year of college education. AT 59.  Over time, plaintiff has worked in various positions, including principally as a retail store clerk between 1992 and 1997, and again from 2002 until October of 2004.  AT 55, 61, 95, 292.

Plaintiff's medical records reveal that she has undergone treatment at the Community Health and Behavioral Services ("CHBS"), including from Dr. Vinay Patil, a psychiatrist at the facility, since May of 2000 for

---

[2]      Portions of the administrative transcript, Dkt. No. 7, which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence that was before the agency when its decision was made, will be cited hereinafter as "AT ___."

moderate, recurrent major depression.[3]  AT 98-134, 135-77, 186-255.

Plaintiff's depression has been treated with various medications, including

Prozak and Trazadone, and appears to have been well managed and

controlled.  *See, e.g.,* AT 326-33.

Plaintiff has also complained to professionals at CHBS of

experiencing lumbar back pain.  *See e.g.* AT 228, 237, 239.  According to

a report of one of plaintiff's treating physicians at the CHBS, Dr. Venkata

Mannava, results of magnetic resonance imaging ("MRI") testing of

plaintiff's spine conducted in 2001 revealed degenerative arthritis in the

lumbosacral area, a herniated disk and disk bulges.[4]  AT 254.   X-rays

subsequently taken in November of 2004 of plaintiff's lumbosacral spine

showed some degenerative changes and mild osteopenia.[5]  AT 276.

Later x-rays of plaintiff's spine taken in March of 2005 revealed some disk

space narrowing at L1-L3.  AT 299, 301.  According to James Naughten,

---

[3]      When appearing in July of 2004 for an initial evaluation at the center, plaintiff stated that she experienced a major depressive episode in 1992, as a result of difficulties with her then-boyfriend, requiring hospitalization for approximately two weeks.  AT 186-87.

[4]      The report of that MRI testing is not included in the record.

[5]      Osteopenia is defined by one authoritative medical source as reduced bone mass due to a decrease in the rate of oesteogenesis to the extent that there is insufficient compensation of normal bone lysis.  *Dorland's Illustrated Medical Dictionary* 1369 (31st ed. 2007)

D.O., who consultatively examined the plaintiff on March 25, 2005, plaintiff's back condition results in only mild restriction in her ability to sit, stand, walk and climb stairs, and only mild to moderate limitation upon her ability to bend, lift and carry.  AT 299.  By all accounts, plaintiff's back pain has been treated conservatively, including through prescriptions of Hydrocodone and Naproxen, *see* AT 59, and has not resulted in any significant restriction in her ability to ambulate or to engage in the full range of daily activities.

Another physical condition from which plaintiff has consistently suffered is obesity.  At a height of 5' 7" and a weight which has fluctuated but has generally been in the 230 pound range, plaintiff has consistently been diagnosed as obese or morbidly obese by professionals at the CHBS where she was seen for primary healthcare beginning on January 20, 2003.  *See* AT 226-68.  While the subject of obesity and the need to lose weight was generally discussed during various visits at the center, however, there is no indication in plaintiff's medical records of any restrictions or limitations associated with her obesity.  *Id.*

In response to a questionnaire concerning her daily activities, plaintiff noted that she is able to prepare meals and perform other household chores; to assist her son with his homework; shop for groceries

and other necessities; to go to the laundry and visit her mother; and to pay bills.  AT 68, 70-71, 76, 78.  Plaintiff is also able to read and watch television, and enjoys writing, printing and drawing.  AT 70, 78.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff protectively filed an application for SSI benefits on January 11, 2005, alleging a disability onset date of October 27, 2004.  AT 46-47. Following the denial of that application, AT 29-33, plaintiff requested and was afforded the opportunity to appear for a hearing before an ALJ for the purpose of challenging the denial of benefits; despite requesting the hearing, however, plaintiff opted at the time to waive her right to personally appear before the assigned ALJ, and additionally to forego legal representation.  AT 37, 43.

On March 20, 2006, ALJ J. Michael Brounoff issued a decision setting forth his findings regarding plaintiff's application for benefits.  AT 19-28.  In his decision the ALJ applied the now familiar, five step test for determining disability, conducting a *de novo* review of the available medical evidence and other materials.  *Id.*  At step one of the disability algorithm, the ALJ concluded that plaintiff had not engaged in substantial gainful activity at any relevant time. AT 21.  The ALJ went on to find at

6

step two that plaintiff suffers from several severe impairments, including

major depression, a history of a T12 fracture, osteoarthritis in her back,

obesity, and right foot degenerative changes, all of sufficient severity to

significantly limit her ability to perform basic work activities, but concluded

at step three that none of those impairments meets or equals any of the

listed, presumptively disabling impairments identified in 20 C.F.R. Pt. 404,

Subpt. P, App. 1.  AT 21-23.  The ALJ also considered, but rejected,

several other conditions, including plaintiff's diagnosed non-insulin

dependent diabetes mellitus ("NIDDM"), which though not well controlled

has not resulted in any functional losses, hypertension, and high

cholesterol as not being of sufficient severity to qualify at step two of the

analysis.  AT 23.

Before proceeding to the next step of the disability inquiry, ALJ

Brounoff surveyed the available medical records and determined that

despite her impairments, plaintiff retains the residual functional capacity

("RFC")

> [t]o lift and/or carry 20 pounds occasionally and 10
> pounds frequently, stand and/or walk 6 hours in an
> 8-hour day, sit 6 hours in an 8-hour day, and push
> and/or pull 20 pounds occasionally and 10 pounds
> frequently.  She can perform simple and some
> detailed tasks, relate to others, attend and
> concentrate if performing simple or some detailed

> tasks, adapt to normal changes in a work place
> setting and handle stress so long as not
> responsible for supervision, management, or
> critical/important decisions.

AT 23.   Applying that RFC finding, the ALJ concluded at step four that

with her limitations plaintiff is unable to return to her past relevant work as

a retail store clerk, in light of her representation that the job required her to

lift up to fifty pounds on occasion.   AT 26.  At step five of the disability

catechism, acknowledging shifting of the burden to the Commissioner, the

ALJ applied his RFC finding and other relevant attributes to the medical

vocational guidelines (the "grid") contained within the regulations, 20

C.F.R. Pt. 404, Subpt., App. 2, concluding that while they did not directly

address plaintiff's circumstances they are consulted for guidelines in

determining disability.  AT 27.  Finding that the plaintiff retains the ability

"to attend to, concentrate on, and perform simple and some detailed

tasks", and further that she is able to relate to others and to adapt to

normal changes in the workplace, the ALJ determined that her ability to

perform the basic requirements of unskilled work is not affected by her

nonexertional limitations.  *Id.* at 27-28.  Applying the grid as a framework,

the ALJ concluded that a finding of no disability was warranted.  *Id.* ¶ 28.

The ALJ's opinion became a final determination of the agency on

December 13, 2002, when the Social Security Administration Appeals

Council, for the second time, denied plaintiff's request for review of that

decision.[6]  AT 5-7.

>    B.    This Action

Plaintiff commenced this action on January 17, 2007.  Dkt. No. 1.

Issue was thereafter joined by the filing of an answer on May 8, 2007, Dkt.

No. 8, preceded by submission on March 22, 2007 of an administrative

transcript of proceedings and evidence before the agency.  Dkt. No. 7.

With the filing of plaintiff's brief on September 19, 2007, Dkt. No. 12, and

that of the Commissioner on November 7, 2007, Dkt. No. 13, the matter is

now ripe for determination, and has been referred to me for the issuance

of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).[7]  *See also* Fed. R. Civ.

---

[6]    The Appeals Council initially denied plaintiff's request for review of the
hearing determination on September 26, 2006.  AT 9-11.  That decision was later
vacated, however, in order to permit the Appeals Council to consider additional
evidence submitted on behalf of the plaintiff following issuance of the ALJ's decision.
AT 5.

[7]    This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998,
and subsequently amended and reissued by Chief District Judge Frederick J. Scullin,
Jr., on September 12, 2003.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13

10

F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §
405(g).

The term "substantial evidence" has been defined as "'such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,
1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,
229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184
(2d Cir. 2003).  To be substantial, there must be "'more than a mere
scintilla'" of evidence scattered throughout the administrative record.
*Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d
at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's
findings are supported by substantial evidence, a reviewing court
considers the whole record, examining the evidence from both sides,
because an analysis of the substantiality of the evidence must also
include that which detracts from its weight." *Williams*, 859 F.2d at 258
(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct.
456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards
have been applied, and/or that substantial evidence does not support the
agency's determination, the agency's decision should be reversed.  42

11

U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and

Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand,

while unusual, is appropriate when there is "persuasive proof of disability"

in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency.  *See Parker*, 626 F.2d at 235;

*see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644

(2d Cir. 1983).

     B.    <u>Disability Determination - The Five Step Evaluation Process</u>

     The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

 In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

        The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it

meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*
§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,
then the claimant is "presumptively disabled."  *Martone*, 70 F. Supp. 2d at
149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20
C.F.R. §§ 404.1520(d), 416.920(d).

　　　If the claimant is not presumptively disabled, step four requires an
assessment of whether the claimant's RFC precludes the performance of
his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it
is determined that it does, then as a final matter the agency must examine
whether the claimant can do any other work.  *Id.* §§ 404.1520(f),
416.920(f).

　　　The burden of showing that the claimant cannot perform past work
lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);
*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it
becomes incumbent upon the agency to prove that the claimant is capable
of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that
burden has been met, the ALJ should consider the claimant's RFC, age,
education, past work experience, and transferability of skills.  *Ferraris*, 728
F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

　　　C.　　The Evidence In This Case

14

1.    RFC

Plaintiff first argues that the ALJ's RFC finding is not well supported, noting that the record fails to include any credible medical source assessment regarding her work-related capabilities.  Specifically, plaintiff challenges the finding that she retains the capacity to meet the exertional requirements associated with light work.[8]

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including

---

[8]      By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Plaintiff does not point to any evidence in the record which undermines the ALJ's findings regarding her physical limitations, nor does

she identify which of the exertional criteria set forth in the RFC finding she

is incapable of meeting.[9]   The physical characteristics associated with the

ALJ's RFC finding are essentially congruent with report of Dr. Naughten's

consultative examination of the plaintiff on March 25, 2005.  AT 297-300.

Based upon his examination, Dr. Naughten discerned full flexion of the

plaintiff's cervical spine, and seventy percent flexion in the thoracic and

lumbar regions, additionally finding a full range of motion of plaintiff's hips,

knees and ankles bilaterally, as well as in her shoulders, elbows,

forearms, and wrists, also bilaterally.  AT 299.  Based upon his

examination, Dr. Naughten concluded that plaintiff is only mildly restricted

in the areas of sitting, standing, walking, and climbing stairs, and

---

[9]   With regard to the ALJ's RFC determination, plaintiff argues that the ALJ failed to include her NIDDM and obesity among the severe impairments that affect plaintiff's RFC.  In fact, as discussed below, the ALJ appropriately found plaintiff's obesity to be a severe impairment (AT 21) but that the evidence in the record did not demonstrate that plaintiff was limited in her RFC due to her obesity.  *See* pp. 25 - 26, *post*.   With respect to diabetes the record in this case establishes, without contradiction, that the plaintiff suffers from type two, non-insulin requiring diabetes. *See* AT 235, 255.  The record does not disclose, however, any evidence of complications related to that condition, or any objective medical testing showing that plaintiff's condition is severe or rendered plaintiff disabled.  *See Edwards v. Barnhart*, Civil No. 3:06CV402, 2007 WL 708802, *10-11 (D. Conn. March 6, 2007).  In fact, the record establishes that plaintiff has not been compliant with directives regarding her diabetes medication, and there is no evidence that a treating physician has limited plaintiff's physical activities as a result of her diabetes.  AT 235, 255.  Under these circumstances, plaintiff has failed to sustain her burden of demonstrating at step two that her type two diabetes is sufficiently severe to warrant further consideration at that step in the analysis. *Pinckney v. Astrue*, No. 06-CV-6625, 2009 WL 750061, *5 (E.D.N.Y. March 17, 2008).

experiences only mild to moderate restriction in her ability to bend, lift and carry.  AT 299.  From this, particularly in the absence of any conflicting assessments from treating sources, the ALJ properly inferred plaintiff's ability to perform light work.  *See Pennay v. Astrue*, 3:05-CV-0673, 2007 WL 5465987, * 5 (N.D.N.Y. Aug. 3, 2007); *see also*, *Cotto v. Commissioner of Social Security*, 212 F.Supp. 2d 167, 171-72 (W.D.N.Y. 2002).

2.   <u>Record Gaps</u>

Plaintiff next argues that in light of the lack of reliable information in the record regarding her capabilities, the ALJ was dutibound to elicit further information from appropriate medical sources in order to complete the record, and that his failure to do so should result in reversal of the Commissioner's determination.

Without question an ALJ is bound by statute not only to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision."  *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).  The applicable

18

regulations supplement this statutory requirement, directing that an ALJ subpoena a prior disability file pertaining to the claimant if deemed "'reasonably necessary for the full presentation of [the] case.'"  *DeChirico*, 134 F.3d at 1184 (quoting 20 C.F.R. § 416.1450(d)(1)).  These obligations are particularly critical in the case of a claimant who, like the plaintiff, is unrepresented by counsel.  *See Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir. 1984).

In this instance the agency has compiled considerable medical evidence regarding treatment of plaintiff's mental and physical conditions. From a review of that evidence I can find no critical gaps in the medical records contained within the administrative transcript in this matter, and plaintiff has pointed to no particular void or failure to obtain available evidence from plaintiff's care providers.  Instead, plaintiff argues that the ALJ should have reached out to health care providers to provide assessments of plaintiff's mental and physical capacities, particularly given the lack of such reports in the record.

While it is true that assessment of plaintiff's capabilities from her treating sources at CHBS could have been beneficial to the process in this matter, the ALJ's failure to solicit those materials is not fatal to his determination.  In this instance plaintiff's psychological and orthopedic

19

conditions were assessed by examining consultants who provided detailed

information concerning the limitations.  The ALJ properly relied upon those

assessments, particularly since they do not appear to be in conflict with

notes of plaintiff's treating physicians, when evaluating plaintiff's

capabilities.  *See Pennay*, 2007 WL 5465987 * 5; *see also*, *Cotto*, 212

F.Supp. 2d at171-72.  I therefore recommend against a finding that the

ALJ failed to properly develop the record in this case.

### 3.    Analysis Of Plaintiff's Mental Condition

Plaintiff next argues that the ALJ failed to properly evaluate her

mental condition, and to fully appreciate the extent of the non-exertional

limitations associated with her depression.

When there is evidence of a mental impairment that allegedly

prevents a claimant from working, the Commissioner must follow a special

procedure at each level of administrative review.[10]  *See* 20 C.F.R. §§

404.1520a, 416.920a.  The Commissioner first records the pertinent

signs, symptoms, findings, functional limitations, and effects of treatments

contained in the record.  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If a

---

[10]    To trigger these requirements a claimant bears the initial responsibility of providing medical evidence sufficient to indicate the potential existence of a mental impairment.  *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508, 404.1514).  In this instance plaintiff has met this burden given the well documented nature of her diagnosed depression.

mental impairment is determined to exist, the Commissioner must next indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent.  *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2).  In doing so the Commissioner rates the degree of functional loss resulting from the impairment – on a scale ranging from no limitation to severe limitation, the latter of which is incompatible with the ability to do work-like functions – analyzing four specific factors, including 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

The Commissioner must then determine the severity of the mental impairment.  *Id.* §§ 404.1520a(d), 416.920a(d)(2).  Where the Commissioner rates the degree of limitation in the first three functional areas as "none" or "mild", and "none" in the fourth functional area, the Commissioner will generally conclude that claimant's impairment is not severe, unless the evidence indicates otherwise.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If, on the other hand, the Commissioner finds the claimant's medical impairment to be severe, he must determine whether it meets or equals a listed mental disorder.  *Id.* §§ 404.1520a(d)(2),

21

416.920a(d)(2).  In the event the impairment is deemed severe, but does not meet or equal a listed mental disorder, the Commissioner next analyzes the claimant's RFC, considering whether he or she is limited in the ability to carry out certain mental activities – such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting – to such a degree as to reduce his or her ability to do past relevant work and other work.  *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c).

An ALJ is no longer required under the governing regulations to append a Psychiatric Review Technique Form ("PRTF") to his or her decision when addressing a case when a psychological impairment is implicated.  65 Fed. Reg. 50746-01 (Aug. 21, 2000), *available at* 2000 WL 1173632, at *50758.  The ALJ is, however, nonetheless subject to the requirement that an analysis of whether a mental impairment exists be incorporated or in some way embodied within his or her decision when evidence of such an impairment is presented.  20 C.F.R. §§ 404.1520a.

To be sure, plaintiff has struggled with depression for several years. The record in this case, however, does not support plaintiff's assertion regarding the extent of her depression and its impact upon her ability to

22

perform work-related functions.  Reports of plaintiff's periodic visits with

Dr. Patil reveal that her depression has been well managed, principally

through the use of medication.  *See, e.g.,* AT 186-225.  Indeed, despite

being treated for ongoing depression dating back to 2000, plaintiff

continued to work until October of 2004, and stated to Dr. Patil on

November 22, 2004 that she had voluntarily left her job but was looking for

another.  AT 223.

The ALJ's rejection of plaintiff's depression as disabling draws

further support from results of a consultative psychological examination

conducted on March 25, 2005 by Dr. Dennis M. Noia, Ph.D.  AT 292-96.

After reviewing plaintiff's medical records and examining her, Dr. Noia

found Ms. Farr capable of understanding and following simple instructions

and directions; performing simple and some complex tasks with

supervision and independently; maintaining attention and concentration

for tasks, learning new tasks; making appropriate decisions, and relating

to and interacting appropriately with others.  AT 296.  Dr. Noia also found,

however, that plaintiff is susceptible to some difficulty in dealing with

stress.[11]  *Id.*

---

[11]     Dr. Noia also concluded that plaintiff could attend to a routine and maintain a schedule, though not on a consistent basis due to her medical problems. AT 295.  Since assessment of plaintiff's physical conditions falls outside the scope of

Under these circumstances the evidence in the record, including a consultative report from Dr. Noia, fully supports the ALJ's determination that plaintiff's diagnosed depression, which by all accounts appears to have been well managed through the use of periodic sessions with Dr. Patel and medication, did not impose any significant limitations upon her ability to perform work-related functions.

    4.   Obesity

Plaintiff cites obesity as yet another basis for concluding that she is unable to perform work-related functions as thought by the ALJ.[12]  In making that argument plaintiff places heavy reliance upon SSR 02-1P, which addresses the subject of obesity.

When considering whether a claimant's impairment meets or equals one or more of the conditions listed in the regulations, that person's obesity and its effects in combination with musculoskeletal impairments must be considered, in the context of the specifics of the claimant's

---

the Dr. Noia's area of expertise, the ALJ properly discounted that portion of Dr. Noia's report, (AT 295-96), and assigned more weight to Dr. Patil's notes reflecting that plaintiff's depression was well controlled through medication.  *See* AT 25.

    [12]    While plaintiff now raises obesity in support of her challenge to the Commissioner's determination, *see* Plaintiff's Brief (Dkt. No. 12) at 13-18, she did not list the condition as among those which limit her ability to work.  *See* AT 54, 93.

circumstances.[13]  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(Q); *see also* SSR 02-1p (addressing obesity and its impact upon a claimant's ability to perform work functions); *Orr v. Barnhart,* 375 F.Supp. 2d 193, 199 (W.D.N.Y. 2005).  As the regulations observe,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity.  The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q).

Undeniably, plaintiff's medical records confirm a history of obesity and of documented concerns by medical professionals regarding her weight as well as the need for her to become educated regarding obesity and to lose weight.  *See, e.g.,* AT 228-68.  The mere presence of a disease or impairment alone, however, is insufficient to establish disability;

---

[13]     Obesity in and of itself was eliminated as a listed disability in October of 1999.  *See* Social Security Ruling 00-3p.  Its description as a potential contributing factor is now referenced in section 1.00(Q) of the listings.

instead, it is the impact of the condition, and in particular any limitations which it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry. *See Rivera v. Harris,* 623 F.2d 212, 215-16 (2d Cir. 1980); *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995). In this instance plaintiff's medical records fail to establish any work-related limitations associated with her obesity.

In assessing the ALJ's treatment of obesity it must be noted that a claimant seeking benefits is responsible for identifying and providing evidence establishing an impairment as well as its severity. 20 C.F.R. §§ 404.1512, 416.912; *see also, e.g., Gray v. Chater*, 903 F. Supp. 293, 297 (N.D.N.Y. 1995) (Koeltl, J.) (citing *Rivera v. Schweiker*, 717 F. Supp. 719, 722 (2d Cir. 1983) and noting that the claimant bears the burden of proving the first four steps of analysis). As can be seen in this case, plaintiff neither identified her overweight or obese condition as an impairment, nor did she submit any evidence as to how the obesity acts to aggravate her lumbar back and other physical conditions. Moreover, plaintiff's medical records do not reveal any difficulty in ambulating associated with her obesity. *See, e.g.,* AT 228 -68; *see also*, AT 68, 70 -71, 76 -78. The ALJ thus properly concluded that obesity was not an impairment, in combination with plaintiff's other conditions. Accordingly, the ALJ's conclusion that

26

plaintiff's condition does not meet or equal any of the listed impairments is supported by substantial evidence, and is not erroneous notwithstanding her diagnosed obesity.

### 5.   Use Of The Grid

Plaintiff lastly complains of the ALJ's resort to the grid to determine disability, maintaining that plaintiff's non-exertional limitations result in substantial erosion of the job base upon which the grid is predicated.

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Rosa*, 168 F.3d at 78.  Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605.  If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate. *Id.*  If, on the other hand, nonexertional impairments, including pain, significantly limit the range of work permitted by exertional limitations, then use of the grid is

27

inappropriate, in which case further evidence and/or testimony is required.[14]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

In this instance the ALJ properly considered whether the grid is applicable in this case for use as a framework to determine the question of disability.  The ALJ first considered whether, given his RFC finding, plaintiff is capable of performing substantially all of the exertional demands of light work, concluding that she is.  AT 27.  With that, the ALJ next properly turned to analysis of whether plaintiff's non-exertional limitations have any significant effect upon the occupational base of unskilled light work upon which the grid, and in particular rules 202.20, 202.21 and 202.22, are predicated.  *Id.*  Properly relying upon SSR 85-15, addressing the minimal mental requirements for competitive, unskilled work, requiring the ability, on a sustained basis,

> [t]o understand, carry out and remember simple instructions, to respond appropriately to supervision, coworkers in usual work situations; and to deal with changes in routine work setting

---

[14]     As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski*, 985 F. Supp. at 310 (citing 20 C.F.R. § 404.1569(a), (c)).

SSR 85-15, the ALJ concluded that the records supported plaintiff's abilities to meet these requirements.  AT 27-28.  Under these circumstances it was not improper for ALJ to resort to the grid for use as a framework in determining the issue of disability.

V.    SUMMARY AND RECOMMENDATION

Without question the evidence in the case, including that which was before the ALJ, substantiates that plaintiff suffers from obesity, chronic back pain attributed to osteoarthritis, and depression.  The record further reflects, however, that neither plaintiff's obesity nor her back pain preclude her ability to perform the exertional requirements of light work.  Turning to plaintiff's depression, the record supports the ALJ's finding that it is well controlled through the use of medication, and imposes only minimal limitations upon her ability to perform unskilled work in the light work category.  Accordingly, the Commissioner's determination, which was predicated upon use of the grid as a framework, resulted from application of proper legal principles and is well supported by substantial evidence in the record.  It is therefore hereby respectfully

RECOMMENDED, that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination that plaintiff was not disabled at the relevant times be AFFIRMED, and that plaintiff's

complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1);  FED. R. CIV. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     May 27, 2009
           Syracuse, NY